I plan to reserve three minutes for rebuttal, and I'll try to watch my clock accordingly. I'll start with the issue of the consistency between the guidelines and the commentary that was flagged in the Court's Friday order. Preliminarily, this issue was waived by the government. I know the Court knows that, and I know that the Court knows that it can disregard that waiver. But here it actually creates a practical issue in that there's fact-finding that would have been relevant to the interpretation had it occurred. If we reach the issue, we can solve that by remanding for the appropriate fact-finding. That is true, Your Honor. But let me tell you what it is so you can evaluate it. As I understand the Court's order, it's basically saying, doesn't the guidelines language about semi-automatic firearms that are capable of accepting a large-capacity magazine just mean that the enhancement applies so long as the gun is of such a configuration that if somebody produced a large-capacity magazine for it, it could take it, whether or not such a magazine is actually present or in the defendant's possession? One possible problem with this reading is that it's not clear, at least to me, that there's any such thing as a semi-automatic pistol that couldn't be fitted with a large-capacity magazine. It's not clear to me either, but like the drafters of the guidelines, I may not be an expert in semi-automatic pistols. It does seem to me as a matter of linguistics, a semi-automatic firearm can be capable of holding a large-caliber magazine, even if one isn't presently inserted or in close proximity to it. I don't think you disagree with that, do you? I think it depends on what you mean by capable. I think capable has a couple of different meanings. I think capable could be like an inherent capability, like what I believe Your Honor is talking about, that just, again, the configuration is such that if somebody turned up with a correctly shaped and sized large-capacity magazine, you could attach it and it would click into the gun. There's also more of a situational capability, like in the circumstances of the offense, the gun was capable of accepting such a magazine because it was attached or in close proximity. That's the one the commentary has chosen. The commentary chooses, I agree with you, that's the one that the commentary chooses, but if you asked me whether Judge Beatty is capable of jumping over a one-foot block, I wouldn't say, is she doing it at the moment or has she recently done it? I would say, gee, she's strong and young and she can probably do that. So I'm not sure why I should be capable as so limited the way you do it. I mean, I think, you know, I understand what you're saying, but I do think there is more than one possible meaning. We do say things like this in everyday speech. I might say, I'm not capable of giving oral argument in San Diego right now, not because I'm not inherently capable of talking to a court or, you know, preparing for oral argument, but because I'm here talking to you. My situation doesn't allow me, it doesn't allow me to be capable of it at this moment. I might say, you know, my office would really like to hire a new attorney right now for our unit, but we're not capable of completing the hiring process because we haven't gotten enough applications yet. So capability could certainly mean the situation. So I want to just, I don't want you to get too hung up on this, but I want to make sure I understand your position. Your position is that the word capable is susceptible of enough meanings so that the definition in the application note is not inconsistent with the guideline. That is my position. I think it's also, it's supported by some history in that the guideline and the commentary were issued at the same time by the same commission. So the people who wrote it thought it was consistent. Well but that's true of every application note that we found inconsistent with a guideline. I mean, and indeed the ones that the Supreme Court's found. They were all written by the same people at the same time. Oh, I guess I'm not sure of that. I thought some may have been written after, but it, you know, somebody thought it was consistent at some point for what that's worth. Now we're talking about linguistics. Can I ask you to shift for a moment? Yes. What does the word could mean? All right. Does it mean would? Or does it mean? Could mean. You know, see, now you argue for a relatively narrow meaning of capable, but when we get to the guideline, to the application note, you say could means right at that very second. As opposed to, could it at some point be used to hold more than 15? Yeah, it's the, I mean, it's a past tense of can. And when you read it, you know, shift into the commentary note, assuming the commentary  Is it a past tense of can? Let me give you, Judge Brady, Judge Beatty, could you hand me your notebook after argument? That's not a past tense, that's a, it's a future, it's sort of a future. Sure. I mean, it means different things in different contexts, but when you say at the moment of the offense, the, the magazine could accept. Well, but it doesn't, that's not what the note says. The moment of the offense is in the part, is in the first part of the application note, not in the A and B part. Well, but it, I mean, it, I mean, it comes before. You argue and maybe persuasively that we ought to read it into the second part, but what it says is, sorry, go ahead, John, a semi-automatic magazine, because at the time of the offense, it had attached to it a magazine or a magazine was next to it. You want us to read at the time of the offense, the device could accept and that, you know, it's not clear to me that the time of the offense modifies both sides of the oar. Well, you, so you, I, I see it as time of the offense, and then I see big A, the firearm had attached to it a magazine or similar device that could accept more than 15 rounds, or B. To me, that phrasing, to put the time of offense before the A, suggests that it modifies both the A and the B. And the B is just a magazine or similar device that could accept more than 15 rounds of ammunition that was in close proximity to the firearm. I think, as far as I know, the only circuit that's mentioned this is the 11th in the Evans case that the government cited. They, they said that time of offense modifies the could accept language and that's the natural reason. There is case law for it. What, what do you think, what do you make of the use of the word could rather than would? I suppose I have to, to try to read it with a word. I mean, I, I hate to be O'Brien Garner-ish on you, but. No, no. That would accept. See, would, would makes it easy for me because, but this says could, which seems to talk about capability in a broad sense, is to go back to our initial. Yeah, no, I, I, I mean, I, I guess I, I have never considered would versus could in that circumstance. To me, could means can, and I, I've really focused on at the time of the offense. I mean, that, that's, that to me is strong language that indicates that what the, what the, you know, if we're accepting the commentary, what the commentary drafters wanted us to do was think about the time of the offense, not some time pre, previous to the offense, years ago when the, when the magazine was first manufactured, before anything was done to it, not at some theoretical future point when it's, you know, some gunsmith may take it and alter it in some way, but at that moment. So the, the, this leads me to what the district court actually dealt with, which was, was this a magazine that could accept more than 15 rounds at the time? And we posit one reading of the record to you and see if you can respond to it for me. The, both sides, experts said, this is a big enough magazine to hold more than 15 rounds. It would hold 21 or 22. It seems to be undisputed that one can modify these magazines, either a manufacturer can or an individual can. And so there may be a magazine that looks like this that can't hold 15 rounds. But the agent testified, put aside the, the hearsay evidence, which the judge didn't seem to rely on. The agent testified that, gee, I, you know, I've heard of that, but I've never seen one. Does that make it more likely than not that this wasn't one? Let me, let me push back on that. I don't believe that's what the agent said. So the, there, there is. What's what he said. He may not have been referring to. Okay. Sorry. He said that, but not about all California compliant magazines. He says that about blockers. So you have the defense expert comes in and says, he, you know, we can't, yes, it's a long magazine. No, I can't tell if it's, if it's a large capacity magazine because there exists California compliant 10 round magazines that look just like this. To be fair. He said, I can't, the agent said, I can't conclusively say, well, that's the, sorry, that's the government agent. I'm talking about taking the evidence in the light and what's favorable to the government. Yes. So I'm talking about the defense expert first says you can't tell them apart because they're, they're modified and they're modified with pins. They're modified with rivets. They're modified. I understand all that, but I'm trying to take the, the government agent says, yes, I can't conclusively say, yes, but I've never seen one and this one looks like a big, large caliber magazine. But he doesn't say that. He says, I can't conclusively say whether it's one of these California compliant. Then he goes on to talk about blockers. He says, I've never seen one with a blocker. He doesn't say anything about pins. He doesn't say anything about rivets being rare or that he's never seen them. He has, it's a whole other paragraph. He's got a paragraph about California compliant, paragraph five in his, in his expert report where he's saying they're California compliant magazines only hold 10 rounds even though they're long and I cannot conclusively say. Then in the next paragraph he goes, I'm also aware about blockers and these blockers are removable and they're rare. So, but he, he, the removable, the rare, that's not, that's not about all California compliant. That's just about the blockers. There's, he's, he's not dealing with pins and rivets. If he had something to say about pins and rivets being rare, I'm sure he would have said it. He doesn't say it. In terms of conclusively determined, he, he's not saying he can reach a, a determination to some level of certainty. He's not saying 51% it's one of these, you know, real, not California compliant, extended capacity magazines. He's saying I can't reach a conclusion to any level of certainty. He doesn't, he, it's not like he says, you know, if it was preponderance I could do it, if it's clear and convincing I can't. He's just saying I can't reach a conclusion. What would you have us do in this case then? I, I would have you remand on a, a, a, yeah, forget the, forget the closed record stuff for the moment. I assume you want to remand so that the judge can, can, we would tell the, you want us to tell the judge that the government didn't make its case. I'd like you to tell the judge that there are rivets and pins and he needs to pay attention to that part of the, the evidence as well. Could the judge pay attention? Could the judge in a remand say now I'm focusing on the hearsay testimony and I'm going to make findings of reliability or non-reliability? I mean, again, I would say that it should be a closed record because the government had their bite at that apple. They had every opportunity. But we almost never send it back on a closed record. Okay. I mean, I, it's, I don't blame you for asking. I mean, he, we could see if the government could put on some actual evidence about, say, when that recording was from or who was in the recording instead of just, you know, attorney proffer. But, yeah, no, I mean, it, if it's not a closed record, I suppose he could, he could look at that and make findings. But, but that's not, I don't think he relied on it in the first place because the government didn't do much with it to make it reliable. Did you wish to reserve the rest of your time? Yeah, I'd like to hold on to whatever time I have. Thank you. Mr. Merritt. Good morning. May it please the court. Brad Merritt on behalf of the United States. I want to start, before I address the question from the court's order on Friday, I want to start with where the court had left off in the last line of questioning because I think it's the most straightforward way for the court to resolve this case, and that is that the district court did not commit clear error on this record in making the factual finding that the defendant's magazine was a large capacity magazine. We have, excuse me, in the record in this case, a two-time convicted felon who is an admitted gang member illegally possessing a stolen firearm with a magazine that extends well below the frame of the firearm. So are you suggesting that his criminal history made it more likely than not that this was actually a large caliber magazine? What I'm suggesting, Your Honor, is that it doesn't make, it was a reasonable inference for the district judge to draw from the record based on the totality of the circumstances. Well, but I'm trying to figure out what the totality of the circumstances are in his criminal record with a stolen weapon and a stolen magazine. The criminal record goes to that he's illegally in possession of a firearm. Sure, but not every felon in possession is subject to the base enhancement. I agree, Your Honor. So what I'm trying to figure out is your argument is that whenever we find a gang member felon in possession, then there's a presumption? No. So tell me what on the record of this case about the magazine tells me that it had a maximum of 15 rounds? Well, three things, Your Honor. First, we have the experts in agreement that this magazine was, at least outwardly, appearing an extended magazine capable of holding 21 or 33 rounds of ammunition. Second, we have the photographs of the magazine, they're ER 50 and 51. And although the defendant's expert posits that there could be pins or rivets or other types of modifications. Or it could have been. Maybe. I'm sorry. Maybe. They may be. The defendant's expert posits that those modifications exist. But they may exist or do exist? That they do exist. So is the purpose behind this jumping up of a couple of years against carrying the gun or using the gun? Well, Your Honor, I think the best way to address that is actually by the history of the guideline itself. In its original formulation, the guideline didn't have this definition of a large capacity magazine. The original guideline had a cross-reference to a statutory definition for semi-automatic assault weapons. It was part of the assault weapons. And this, the Glock was not listed? I just don't understand this. You're giving this person two years, two additional years. What specifically did he do wrong under the guidelines as you understand them? Is it just carrying the weapon? Is it having it in your closet that it's doing it? Or is it actually using it? Well, it's the possession of the firearm that's the offense in this case. You're letting your voice drop. You might as well keep it up so I can hear the whole sentence. I apologize. The offense in this case was the possession of the firearm. The heightened offense level applies because the firearm was capable of accepting a large capacity magazine. And this gets into the court's question from its order on Friday. The language of the guideline itself only refers to the capability of the firearm. The guideline commentary goes on to add and narrow the guideline itself by adding these additional requirements that the magazine either be attached or in close proximity to the firearm. So are you suggesting that the guideline is broader than the application note? Yes, Your Honor. Did you ever make that argument in the district court? No, the government did not. Has the government ever made that argument to your knowledge in a case? I'm not familiar with it. There is a Fifth Circuit case in which a judge actually adopts this view, but I'm trying to figure out what's the view of the United States? Is the view you're representing the United States? Is it your view that the proof of proofing compliance with the application note is not required? Your Honor, the government's view is that the application note impermissibly narrows the guideline itself in a way that it's inconsistent under Stinson and this court's case in Lambert. And it's for three reasons that the government interprets it that way. First, the guideline text itself, again, only refers to the capability of the firearm. Second, in the context of the entire 2K2.1 guideline, the government submits that that is the most consistent reading of the plain meaning. And if we look at the heightened defense levels, there's two circumstances that they apply in. One, where there's the semi-automatic firearm capable of accepting large capacity magazine. The other is if the firearm that was possessed was of the type listed in 26 U.S.C. section 5845. And that's the definition for firearms such as, like, short-barreled shotgun. And this is not one that's listed there? The firearm in this case is not listed there. Right. Nor was it listed under the previous statute, 930, correct? Well, the previous statute defined semi-automatic pistols as a type of assault weapon if it met five criteria. And this one does not, there's no contention in this case that this one meets those five characteristics. There's nothing in the record. Right. So, looking at this one, I assume it would not have qualified as a forbidden weapon under the previous statute. Well, I think two responses, Your Honor. One, if the court's question is a factual one, the court should remand it. Right. No, but let's assume that I'm right, that it doesn't meet the five characteristics. One thing that troubles me in this case is that the legislative history of, legislative history of a guideline, I guess it's legislative history, the history of the guideline suggests that it wasn't meant, it was just meant to incorporate the old law. And because the old law had now been repealed, and rather than name all these things, we're going to describe their characteristics. But this was not a weapon that would have fallen under 930 unless it met those five specific points. And I did a little, I don't know much about semi-automatic weapons, but it doesn't seem to meet the barreling or suppressor or weight requirements. So I'm trying to figure out whether or not, why we should read this guideline as encompassing something that wasn't covered by the previous guideline. Well, Your Honor, I think there are two separate issues. One is the factual issue. Did this gun meet that prior definition? Would it fit within? I'm going to assume it doesn't. But the question is really one of interpretation of, does the guideline mean just the capability of the firearm? Or does the guideline mean the capability of the firearm narrowed by proximity to the gun? Let me raise the point your friend raises, because I'm not an expert. I haven't fired a semi-automatic weapon since I was discharged from the Army, and I hope to never touch one again. But are there any semi-automatic weapons that are not capable of accepting a large caliber magazine? I don't know the answer to that question. The textual history suggests that there are rimfire .22 caliber ammunition magazines that are not covered by the prior definition. They might be covered by the prior 930 definition because it attached to some place other than the stock. Yeah, the 930 definition specifically excluded those. So that suggests that there are firearms out there that would be semi-automatic that do not. But I don't know that for a fact. That's just my reading of the statute itself. So, I'm still trying to figure out, put aside the application note conflict issue. Tell me, I took you off course I think, but I'm still trying to figure out how you proved that, whether by a preponderance of the evidence or clear and convincing evidence, that the And assume that I'm not, I don't regard it as probative that he was convicted of the crime for which he was accused, which is to say that he was a felon in possession. So what is it, what was the evidence in this case from which the district court could draw the conclusion that the application note was satisfied? So I would point to the court four things. One, the firearm was a stolen firearm. You're letting your voice drop at the end again. Sorry. One, the firearm was a stolen firearm. Two, the photographs of the magazine. Stop on the first one. Why does the fact that it was stolen make it more likely than not, even if I'm just looking at a preponderance, that the magazine was a large caliber magazine? Well, I think the relevance of it being stolen, Your Honor, is that it doesn't make sense that a defendant illegally possessing a stolen firearm would care about complying with state magazine requirements and ensure that the magazine was compliant with state law. It would be a reasonable inference as part of the admixture of all the information for the district court to infer that the magazine that the defendant possessed was not one of these California compliant magazines. He would make that, he would make that as a finding, a fact, you believe? That the district court, it would go as part of one of the inferences the district court could draw from the record. The district court didn't do that in this case? Not specifically, no. It had that available in the record. It did make the finding that it was a fact. Okay, so tell me what other, tell me what other... Well, if you have the inference, it has to be a finding of fact, right? That's right, and... So he's making a finding of fact. That's correct, Your Honor. So let me talk about the three other things. One, the next thing would be the images of the magazine itself. Yeah, and we all agree that this magazine is big enough to be a large caliber magazine. That's right, and I think the images add one more important detail in that there are no rivets or pins, other things that one might expect to have some sort of exterior modification. So there's nothing on the surface of the magazine as you look at it that suggests... Based upon some photographs, right? That's correct, Your Honor, yes. The next thing would be the defense expert who made his opinion that the firearm was likely capable of, at least initially designed to be capable of holding 22 or 23 rounds. Nobody can test that. That's right, and there's one more thing, and this goes to the reason that the government's expert in the district court focused on the blockers, and that's because although the defense expert posits about these other ways that magazines can be modified, he attaches only one exemplar to his expert report, and that's an exemplar from ArmsDealer.com where it's an advertisement for a magazine for sale, and one of these California compliant magazines, and that advertisement specifically advertises that it does not have rivets, does not have pins, and it comes with a removable blocker. And so the government's expert was responding directly to, here's the example the defendant's California compliant, and the government's expert responded to that and said, well, number one, these blockers, as the advertisement itself says, are easily removable, and that's confirmed empirically by his experience in all the firearms, seized firearm magazines that he has examined. So let's stop there for a second because now I want to understand the government's argument. Is it your argument that even if at the time of the offense, which is to say at the time of possession, there was one of these blockers in there, and it therefore could not accept at that moment more than 15, the possibility that it could easily be modified to accept more than 15 is enough? I want to, I'm going to answer your question directly, I want to make clear that the government's argument doesn't rule, doesn't No, no, I want to know your position about, because one of the fights in this case, in The question is what could the magazine do at the very time of the offense, and so I want to know what your position is about, are we limited to the very moment of the offense, or do you think the ability to modify the magazine cuts into this analysis in some way? The government's view is that the word could accept is a word of possibility, and that's about the capability of a firearm, there's cases the government cited Davis, Torres, Evans, where they talk about as long as the firearm, even if it was inoperable at the time So why didn't they use capable of accepting, in the application note, if that's what they meant? Well, they could have, your honor, I think the word could is close enough linguistically that it's conveying the same meaning, and I would also point the court to, again, the definition for large capacity ammunition feeding devices, now Well, the previous ban, as I read it, if you had one of the listed weapons, we didn't care whether there was a magazine in it or in close proximity to it, correct? That's correct, your honor, but in that definition of large capacity magazines, which, although it's sunset, it continues on in an ATF rule that's still in effect, that's at 27 CFR 478.11, and that definition includes magazines that are, that can accept more than 10 rounds or more than 15 rounds, or could be readily restored to accept Yeah, I understand, the drafters of the statute, the previous statute, knew how to describe that situation, that can or can be restored to, but that language is not in the application note, is it? Well, what I think the history suggests, your honor, is that what the guideline drafters were trying to do is simply replace the cross-reference to the prior statute, and if it's not narrowing the statute impermissibly, if we're talking about just interpreting the language that they used, I think it needs to be interpreted in the context that it was drafted in, and it was drafted in the context of the background of the prior definition of a large capacity magazine, which included this readily restored notion, and so when the drafters used the the government's view is that they were incorporating that concept. One other question, and I'm going to take you slightly over, neither side seems to me has cited a case that deals with this restoration issue, are you aware of any? Not for the magazine, we've cited cases Yeah, I understand Davis deals with an inoperable firearm The government's not aware of a case specifically addressing the magazine No, I have a question for you. You agree that the government did not make the argument as suggested by the court's question that the application note impermissibly narrows the guideline, that was not made below in the district court, and I believe Judge Hurwitz asked you at some point if the government had ever made that argument, I don't recall your answer, but why didn't you make that argument? Why is it that the government has not been advocating that, which would, seems to ease the government's ability to impose the four level enhancement, and the reason I ask is because it seems opportunistic that the government's making that argument now after receiving a suggestion from the court, but has not, for whatever reason, policy, or based on the language of the application note and the guideline, made that argument before? I'm not aware of a policy sort of government writ large on this issue, what I can say is that in this case the government believed it had sufficient evidence to apply any interpretation of the guideline Well, that's kind of an astonishing statement to me because this is, seems like a case with fairly difficult facts for the government in that the firearm and the magazine were never recovered, and so it's sort of sketchy what you have are some photographs, so that would seem to be a circumstance where the facts are not as strong as if you had the evidence available for inspection. So based on the absence of the firearm and the magazine, the government decided the evidence was so strong they didn't need to challenge the application note? Well, again, Your Honor, it's not every day that the government challenges guidelines or statutes as inconsistent, and like in every case, typically if there's a way to resolve the issue on the facts, the government's going to present that argument as the most narrow method of resolving the case before the court. That's what the government did here, and I would point the court to U.S. v. Mongol Nation, which is a prior decision of this court from this year, where the court said, this court said that it must apply its own view of the law as it sees it, even where the parties have failed to address a dispositive question of law. And so the court can do that, and obviously the court has suggested and invited a response from the parties, and in response to that invitation, the government believes the suggestion is correct, that the guideline is impermissibly narrowed by the application. All right. Could I ask a question? I'm a little concerned about this issue. There's a question in a couple of years of a person's life, depending upon how we look at this case, and there's a considerable amount going on now that you should be able to put people in jail because of the type of weapon they have, and that's essentially what we're having here. He never asked to fire it. He never asked intent to fire it. It's just carrying it around is itself a crime. So I think this particular guideline is a very difficult one, and I think that's why we're having a problem with it. So let me ask you the question. The guideline provision at issue looks to the firearm at the time of the offense. Is that correct? That's correct. Okay. And the defendant was charged with illegal possession of a firearm at a specific point of time that was covered by photographs. Correct. And it's based upon interpretation of those photographs that we move from there. And does the phrase, quote, time of the offense, close quote, refer to that time as the illegal possession? That is the time we're looking at? Well, that is the time of the offense, the possession of it. The government's argument is that at the time, what the magazine has to, what requires the actually had more than 15 rounds, or it could accept more than 15 rounds. And the government's interpretation of could includes ready conversion or easy restoration. So you're looking at the magazine? If I may continue. So if it didn't have any bullets in it at all, it's still the same violation? That's correct. And there's case law that says- If they had modified it in such a way that it was inoperable, you still would be tagged on for clearing that gun. It doesn't have to operate, it just has to have these particular conditions, right? No, Your Honor. There could be a circumstance where a magazine is so permanently modified to be inoperable, like an inoperable firearm, that it would not qualify under the Enhancement. So is that the burden of the proof of the government to show that's the situation? Well, it's the government's burden to prove that the magazine met the definition. And in this case, the government believes that the evidence is sufficient, and at least it's not clear error for the district court to have drawn the conclusion that the firearm was a large capacity magazine. Well, this particular question has a lot of red flags on it for me, and I'm just working my way through. Have any other circuits had the opportunity to weigh in on this? And if so, how did they come up? When you say weigh in, it's directly on the interpretive question? Directly on this particular question that I'm raising. I'm not familiar with any other circuit law that directly answers the question. So it's passed to us to take care of that issue. Okay, thank you. Judge Wallace. Judge Wallace asked the question I was going to ask. Thank you, counsel. Just briefly, Your Honor, unless someone wants to start with a question. I want to push back on a factual claim made by the government. They claim that you can tell by looking at the gun that there's no rivets or pins in it. I have no idea how they could tell that. I'm not a gun expert. They're not a gun expert. I suppose probably none of you are gun experts. There's no way that I can tell by looking at the gun. But the agent did say, I don't see any rivets or pins. I don't believe he said, I don't see any rivets or pins. I may be wrong. I don't want to put Your Honor on the spot, but I don't. I normally get to ask you what the record says, but did the agent ever say that? No, the agent doesn't say there are no rivets or pins here. The agent just doesn't talk about it. I think if there were no rivets and pins, if he could look at it and say, there are no pins, there are no rivets, and blockers are incredibly rare, that would have been good for the government if their expert could have said that, and I'm sure he would have said it. I know you've got no burden in this case. The burden's on the government. Yes. But let's assume there's a law that says you can't drive around a car with a two-cylinder engine, and you're stopped with a car that normally has a two-cylinder engine, and it gets destroyed or something like that, and your expert comes in and says, well, you can modify those cars to put in four-cylinder engines. But isn't the normal presumption that something that looks like a duck and quacks like a duck is a duck? I don't think there's any normal presumption here. You don't have the government expert saying, most of the 30-round magazines that we see in this area are original, sorry, most of the extended length are original 30-round magazines. Would that be sufficient in your view? It would help them, but we don't have any sense of the proportions in the world of anything, right? For all we know, in California, where 10-round magazines are what's legal, what you find are extended length magazines that only hold 10 rounds, right? There's nothing that says that the normal configuration is the original 30-round configuration. I'm trying to figure out on this record, and this is a strange case, because normally we have the magazine in the firearm. We just have a picture of the defendant, apparently. Sitting on the toilet. On the toilet. With the magazine in it. But I'm trying to figure out, in your view, could the government ever prove its case with putting aside the hearsay evidence for a moment on the record in this case? I mean, not with what's been produced, right? No, I understand. I think what you're really telling me is, see, since they were unlucky enough not to recover the weapon, and given the fact that everybody agrees it's possible to modify these things, your guy gets a pass on it. I believe that's right. Absent some, like, you know, if their expert, again, if their expert had come through and said, I'm looking at this, I can see there are no pins and rivets, and I can see that, you know, and then that only leaves blockers and glue, and those are incredibly rare or something, you know, they'd be getting closer. But we're nowhere near, right? We just have their experts saying, I can't tell what this is. Our experts saying, I can't tell what this is. And someone asked a question about it being stolen. I think that makes it more likely that it's compliant, because it's more likely that, you know, if you're taking it from a citizen, it's more likely it's from you. I wouldn't do it the inference from his, and I wouldn't do it the inference from yours. Judge Wallace has a question. Sorry. I have another question that's brought up by your comments. That deals with how we approach this case. Almost every other circuit that I've found in looking at this case, the government has to prove a fact by, only by a preponderance of the evidence. Notwithstanding our circuit precedent, why should we not join the sister circuits and adopt such a rule? I mean, I don't sort of— the evidence isn't overwhelming by a long shot. What standard should we apply? And what's wrong with applying the standard of every other circuit that's addressed this rather than creating a circuit conflict? Well, the circuit conflict, I mean, if you're talking about preponderance versus clear and convincing, that circuit conflict already exists. That's an issue. This court decided— But aren't we the only circuit that says that? I believe that's right, but we are the— That's often true. I don't mean to say we. You continue to say that. You've continued to say it since Beckles. Does this derive— There's no intervening authority. But doesn't this derive from the time when everybody, quite correctly, thought the guidelines were mandatory? It does derive from that time. This court looked at it after they were no longer mandatory, said, we're sticking to this. We'd have to kick this up to 11 people if we wanted to do that. Exactly. There's a theory going around that after Beckles, where you say the void for vagueness doesn't apply to the guidelines, that should change this. But this court has continued to apply clear and convincing since Beckles. So I don't think this panel can make a decision about that. I think that's an en banc issue. That's true. I didn't limit it. I said the court. That's all of us. Why should we continue on something like this to have a circuit conflict? This is important stuff that should be identified specifically. I happen to think the other circuits have it wrong. I understand you have that position. Do you have something other than your feelings on that? You have something that's incredibly—you have a very disproportionate enhancement coming to somebody. It does make sense to hold the government to a higher burden. If you're essentially doubling their sentence, why not make the government prove it properly? Why let them get away with just, ah, 51 percent, we're fine. I take it your argument is— The question I was really asking is why we shouldn't move over towards what everyone else is saying, because if all the other circuits have gone that way, it indicates that there's pretty good judges that have different feelings. So I wanted to get your view if we come to decide that issue in our court. Honestly, Your Honor, I don't know that I can give a reason. I mean, we didn't brief the issue. The government didn't— The government seems to assume that we have to apply it. Yeah, and I don't feel like I can give you a full— I want you to answer Judge Wallace's question in a different context. Let's assume for a moment that our standard were preponderance of the evidence. Yes. Would the evidence in this case meet the preponderance standard? No, I think we prevail either way. I think they—I mean, again, you have their expert and our expert, all the people who know about guns, saying that when you look at this magazine, you can't tell what kind of magazine it is. That to me is kind of, you know, game, set, match. All right. Thank you, counsel. This case is submitted, and we are adjourned. All rise. This court for this session stands adjourned.
judges: WALLACE, HURWITZ, BADE